[Cite as *State v. Haugh*, 2024-Ohio-79.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| STATE OF OHIO | : | JUDGES: |
| | : | |
| | : | Hon. William B. Hoffman, P.J. |
| Plaintiff-Appellee | : | Hon. John W. Wise, J. |
| | : | Hon. Patricia A. Delaney, J. |
| -vs- | : | |
| | : | Case No. 2023AP020009 |
| | : | |
| WILSON C. HAUGH, JR. | : | |
| | : | |
| | : | |
| Defendant-Appellant | : | O P I N I O N |


CHARACTER OF PROCEEDING:      Appeal from the Tuscarawas County
Court of Common Pleas, Case No.
2021CR030093


JUDGMENT:                     AFFIRMED


DATE OF JUDGMENT ENTRY:       January 11, 2024


APPEARANCES:

For Plaintiff-Appellee:                For Defendant-Appellant:

RYAN STYER                             GEORGE URBAN
TUSCARAWAS CO. PROSECUTOR              116 Cleveland Ave. NW, Ste. 808
KRISTINE W. BEARD                      Canton, OH 44702
125 E. High Ave.
New Philadelphia, OH 44663

*Delaney, J.*

{¶1} Appellant Wilson C. Haugh, Jr. appeals from the March 15, 2023 Judgment Entry on Sentencing of the Tuscarawas County Court of Common Pleas. Appellee is the state of Ohio.

**FACTS AND PROCEDURAL HISTORY**

{¶2} The following evidence is adduced from the record of appellant's jury trial.

{¶3} Appellant and Jane Doe were married for 7 years and lived in Tuscarawas County. They had one child together, Mary Doe. In 2014, Jane Doe left the marital residence, filed for an annulment, and obtained a civil protection order (CPO) against appellant which expired in one year. Appellant moved to Lorain County and filed for divorce there. The divorce was final in October 2015. Appellant continued to live in Lorain County, and Jane and Mary Doe continued to live in Tuscarawas County.

{¶4} Jane Doe's original CPO expired and she sought another. On March 6, 2018, a "Domestic Violence Civil Protection Order (CPO) Full Hearing (R.C. 3113.31)" was filed in the Tuscarawas County Court of Common Pleas. The named protected persons are Jane Doe and Mary Doe, and the expiration date of the CPO is March 1, 2023. Respondent is appellant, who is ordered to, e.g., not initiate or have any contact with Jane and Mary at their residence, workplace, or school. The order defines "contact" as, e.g., by delivery service, "social networking media," and communications by any means, directly or through another person. The Sheriff's Return states the CPO was personally served on appellant on March 16, 2018.[1]

---

[1] Appellee's Exhibit A.

{¶5} In 2018, Jane called police because appellant violated the CPO and appellant was ultimately convicted of misdemeanor violation of a protection order pursuant to R.C. 2919.27. Appellee's Exhibit B is a certified copy of appellant's conviction in the New Philadelphia Municipal Court upon one count of violation of a protection order. Appellant entered a counseled plea of no contest and was found guilty on or around April 23, 2018.

{¶6} On or around November 10, 2020, an Amazon package arrived at the residence of Jane and Mary Doe, addressed to Mary. The package contained a blanket. Appellee's Exhibit C is a photograph taken by Officer Boyd of the New Philadelphia Police Department. The photo shows a blanket depicting an air-mail envelope containing the following printed message: "To My Daughter: Even when I'm not close by, I want you to know I love you and I'm so proud of you. Wrap yourself up in this and consider it a big hug! Love, Dad." During his pro se opening statement at trial and throughout the proceedings, appellant admitted he sent Mary Doe this blanket. T. 128.

{¶7} On January 8, 2021, Jane Doe reported appellant contacted her in a group chat via Facebook Messenger. Appellee's Exhibit D is a printout of a Facebook Messenger group chat including two postings of a meme, both posted by "Wilson," of a menacing Santa Claus figure with the words, "*PARENTAL ALIENATION*[:] If a child only sees one parent this holiday *YOU KNOW WHO THE ABUSER IS.*" Jane testified the Facebook Messenger group is "old" but includes Jane, appellant, and family members on both sides.

{¶8} Jane reported both incidents to the New Philadelphia Police Department because appellant violated the terms of the CPO and put her in fear for her own and

Mary's safety. Officers confirmed appellant's prior conviction and collected evidence, including the photograph of the blanket and the printout of the group chat.

{¶9} Appellant was charged by indictment with one count of violation of a protection order pursuant to R.C. 2919.27(A)(1) and (B)(3)(C), a felony of the fifth degree, and entered a plea of not guilty. Appellant was represented by several attorneys in the history of the case but represented himself at trial with standby counsel. Appellant moved for a judgment of acquittal at the close of the evidence; the motion was overruled.

{¶10} Appellant was found guilty as charged. The jury also found appellant had a prior conviction for violation of a CPO. The trial court ordered a pre-sentence investigation and deferred sentencing. Appellant was later sentenced to a term of one year of community-control supervision and 75 hours of community service.

{¶11} Appellant now appeals from the trial court's entry of conviction and sentence.

{¶12} Appellant raises two assignments of error:

**ASSIGNMENTS OF ERROR**

{¶13} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

{¶14} "II. THE TRIAL COURT ERRED WHEN IT OVERRULED APPELLANT'S CRIMINAL RULE 29 MOTION FOR ACQUITTAL BECAUSE THE STATE FAILED TO PRODUCE SUFFICIENT EVIDENCE TO SUSTAIN A CONVICTION AGAINST APPELLANT."

**ANALYSIS**

**I., II.**

{¶15} Appellant's two assignments of error are related and will be considered together. He argues his conviction upon one count of violation of a protection order is not supported by sufficient evidence and is against the manifest weight of the evidence, and the trial court should have granted his motion for acquittal pursuant to Crim.R. 29(A). We disagree.

{¶16} Appellant argues his conviction is supported by insufficient evidence. The legal concepts of sufficiency of the evidence and weight of the evidence are both quantitatively and qualitatively different. *State v. Thompkins*, 78 Ohio St.3d 380, 1997-Ohio-52, 678 N.E.2d 541, paragraph two of the syllabus. The standard of review for a challenge to the sufficiency of the evidence is set forth in *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991) at paragraph two of the syllabus, in which the Ohio Supreme Court held, "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."

{¶17} Appellant argues that the trial court erred when it denied his Crim.R. 29 motion for acquittal. Pursuant to Crim.R. 29(A), a court "shall order the entry of the judgment of acquittal of one or more offenses * * * if the evidence is insufficient to sustain a conviction of such offense or offenses." Because a Crim.R. 29 motion questions the

sufficiency of the evidence, "[w]e apply the same standard of review to Crim.R. 29 motions as we use in reviewing the sufficiency of the evidence." Whether the evidence is legally sufficient to sustain a verdict is a question of law. *Id.* at ¶ 38, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). "Sufficiency is a test of adequacy." *Id.* "We construe the evidence in a light most favorable to the prosecution and determine whether a rational trier of fact could have found the essential elements of the offense proven beyond a reasonable doubt." *Id.*, citing *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus.

{¶18} Appellant also argues his conviction is against the manifest weight of the evidence. In determining whether a conviction is against the manifest weight of the evidence, the court of appeals functions as the "thirteenth juror," and after "reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be overturned and a new trial ordered." *State v. Thompkins*, supra, 78 Ohio St.3d at 387. Reversing a conviction as being against the manifest weight of the evidence and ordering a new trial should be reserved for only the "exceptional case in which the evidence weighs heavily against the conviction." *Id.*

{¶19} Upon a challenge to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient. *State v. Ashcraft*, 5th Dist. Richland No. 2021-CA-0024, 2023-Ohio-2378, ¶ 14, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997). "Weight of the evidence" addresses the evidence's

effect of inducing belief. *State v. Thompkins, supra,* 78 Ohio St.3d at 386-387, 678 N.E.2d 541 (1997), *State v. Williams,* 99 Ohio St.3d 493, 2003-Ohio-4396, 794 N.E.2d 27, ¶ 83. When a court of appeals reverses a judgment of a trial court on the basis that the verdict is against the weight of the evidence, the appellate court sits as a "thirteenth juror" and disagrees with the fact finder's resolution of the conflicting testimony. *Thompkins* at 387, 678 N.E.2d 541, *citing Tibbs v. Florida*, 457 U.S. 31, 42, 102 S.Ct. 2211, 72 L.Ed.2d 652 (1982) (quotation marks omitted); *State v. Wilson,* 113 Ohio St.3d 382, 2007-Ohio-2202, 865 N.E.2d 1244, ¶ 25, citing *Thompkins.*

{¶20} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). The Ohio Supreme Court has emphasized: " '[I]n determining whether the judgment below is manifestly against the weight of the evidence, every reasonable intendment and every reasonable presumption must be made in favor of the judgment and the finding of facts. * * *.' " *Eastley v. Volkman,* 132 Ohio St.3d 328, 334, 972 N.E.2d 517, 2012-Ohio-2179, *quoting Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 603, at 191–192 (1978).

{¶21} Appellant was found guilty upon one count of violation of a protection order pursuant to R.C. 2919.27(A)(1) and (B)(3)(a), a felony of the fifth degree. Those sections state:

(A) No person shall recklessly violate the terms of any of the following:

(1) A protection order issued or consent agreement approved pursuant to section 2919.26 or 3113.31 of the Revised Code;

* * * *.

(B)(1) Whoever violates this section is guilty of violating a protection order.

* * * *.

(3) Violating a protection order is a felony of the fifth degree if the offender previously has been convicted of, pleaded guilty to, or been adjudicated a delinquent child for any of the following:

(a) A violation of a protection order issued or consent agreement approved pursuant to section 2151.34, 2903.213, 2903.214, 2919.26, or 3113.31 of the Revised Code[.]

{¶22} R.C. 2901.22(C) defines the culpable mental state of "reckless" as:

A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

{¶23} Appellant argues his conduct did not violate the terms of the CPO because he reasonably believed the terms of a Lorain County domestic relations order "overrode the issues of contact with the minor child." Brief, 6. Appellant further argues sending a "loving note to a child from her father" cannot be a criminal violation and there is no evidence the parental-alienation meme was intended to be seen by Jane Doe.

{¶24} We disagree with appellant's characterization of the evidence. As appellee points out, appellant was charged with one violation for a course of conduct in which he contacted Mary and Jane Doe twice. Appellee established Jane Doe obtained a CPO on March 6, 2018, which was valid for 5 years. The terms of the CPO stated appellant was to have no contact with Jane and Mary Doe directly or indirectly, including by delivery and by electronic communication. Appellant admittedly sent the package containing the blanket to Mary Doe at the Doe residence, although he implies this contact was permitted by his visitation order from Lorain County. Appellant claims there is no evidence the Facebook Messenger meme was posted by him, but the evidence at trial showed the meme was posted in a Messenger group containing appellant and Jane Doe; the meme stated it was posted by "Wilson;" the context of the message was consistent with appellant's claims against Jane; and there was a strong likelihood Jane would see the meme or learn of it because she and her family members were in the Facebook group.

{¶25} We find sufficient evidence that appellant's conduct was reckless in contacting Mary and Jane Doe in violation of the CPO. Appellant knew of the existence of the CPO and blatantly disregarded its terms. See, *State v. Morgan*, 5th Dist. Stark No. 2009 CA 00130, 2010-Ohio-4858, ¶ 25 [despite out-of-state domestic relations order, defendant was reckless in violating terms of CPO prohibiting harassing communication];

*State v. Zobel*, 5th Dist. Tuscarawas No. 2016 AP 03 0019, 2016-Ohio-5751, ¶ 43 [state presented evidence CPO was in effect when defendant was arrested, defendant knew it was in effect, and defendant entered onto victim's property in violation of such order]; *State v. Devoll*, 5th Dist. Muskingum No. CT2023-0015, 2023-Ohio-3574, ¶¶ 13-14 [defendant's conduct reckless when he assumed CPO had been lifted despite no evidence of such].

{¶26} Moreover, we note appellant was convicted of violating the CPO in 2018, a fact found by the jury. His continued contact with the victims was therefore reckless as to violating a civil protection order. *State v. Hall*, 5th Dist. No. 12CAA030017, 2013-Ohio-660, 989 N.E.2d 111, ¶ 29, *appeal allowed, cause remanded on other grounds,* 135 Ohio St.3d 1456, 2013-Ohio-2285, 988 N.E.2d 576.

{¶27} Viewing the evidence in a light most favorable to appellee, we find the jury could have found the essential elements of violation of a protection order proven beyond a reasonable doubt. *State v. Ybarra*, 5th Dist. Licking No. 17-CA-26, 2017-Ohio-9144, ¶ 26 [defendant violated CPO by driving through trailer park where victim lived]. The trial court therefore did not err in overruling the motion for acquittal.

{¶28} We further find this is not an "exceptional case in which the evidence weighs heavily against the conviction." *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the entire record in this matter we find appellant's conviction for violation of a CPO is not against the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of appellant's guilt.

{¶29} Appellant's two assignments of error are overruled.

**CONCLUSION**

{¶30} Appellant's two assignments of error are overruled and the judgment of the

Tuscarawas County Court of Common Pleas is affirmed.

By: Delaney, J.,

Hoffman, P.J. and

Wise, J., concur.